# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEGATO VAPORS, LLC., a Kentucky Limited Liability Company, JET SETTER JUICE LLC, a Florida Limited Liability Company, ROCKY MOUNTAIN ECIGS LLC, a Delaware Limited Liability Company, and DERB E CIGS INDIANA LLC, an Indiana Limited Liability Company | ) ) ) ) ) ) | |
| PETITIONERS | ) ) | |
| vs. | ) ) | CASE NO. 1:15-cv-00761-SEB/TAB |
| DAVID COOK, in his official capacity as Chairman of the Indiana Alcohol and Tobacco Commission, DAVID COLEMAN, in his official capacity as Vice-Chairman of the Indiana Alcohol and Tobacco Commission, DALE GRUBB, in his official capacity as Commissioner of the Indiana Alcohol and Tobacco Commission, MARJORIE MAGINN, in her official capacity as Commissioner of the Indiana Alcohol and Tobacco Commission, and MATT STRITTMATTER, in his official capacity as the Superintendent of the Indiana Excise Police and STATE OF INDIANA | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| RESPONDENTS | ) ) | |

## FIRST AMENDED PETITION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Petitioners, Legato Vapors, LLC., ("Legato"), Jet Setter Juice LLC ("Jet Setter"), Rocky Mountain Ecigs LLC. ("Rocky Mountain") and Derb E Cigs Indiana, LLC. ("DerbECigs"), by counsel, make the following allegations for their First Amended Petition for Declaratory Judgment and Injunctive Relief against the Respondents, David Cook, David Coleman, Dale Grubb and Marjorie Maginn, in their respective capacities as Chairman, Vice-Chairman and Commissioners

of the Indiana Alcohol and Tobacco Commission, Matt Strittmatter, in his capacity as the Superintendent of the Indiana Excise Police, and the State of Indiana, based upon information and belief, except for the allegations pertaining to them, which are based upon personal knowledge.

## INTRODUCTION

1.      This is a civil rights and declaratory judgment action brought pursuant to 28 U.S.C. §2201, *et. seq*. and 42 U.S.C. §1983 for the purpose of challenging the constitutionality of all, or portions, of Indiana House Enrolled Act 1432 ("HEA 1432"), as modified in pertinent part by Indiana Senate Enrolled Act 463 ("SEA 463"), as well as portions of SEA 463; both enactments being adopted by the Indiana Legislature during its 2015 session.

2.      The basis for the Petitioners' challenge is four pronged and the allegations set forth below assert that:

> (i)      HEA 1432 in its entirety, as modified in part by Sections 8, 9 and 10 of SEA 463, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by not equally regulating similarly-situated e-liquid manufacturers, bottlers and distributors, and by unequally defining only certain e-liquids as "tobacco products" despite the similarity of all liquid substances used in both electronic cigarette and vaping pen devices;

> (ii)      Section 9 of HEA 1432, as modified in part by Sections 8, 9 and 10 of SEA 463, violate the Commerce Clause to the United States Constitution by imposing an impermissible extraterritorial regulation upon commercial activity which occurs wholly in another state, and that such challenged provisions are not narrowly-tailored to advance a legitimate governmental interest;

> (iii)      HEA 1432 in its entirety violates both the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by including "e-liquids" within the definition of "tobacco products" for purposes of the permitting requirements embodied in Indiana Code §7.1-3-18.5 without a rational basis for such classification and without being narrowly-tailored to advance a legitimate governmental interest, and such definition impermissibly classifies certain liquid substances for regulatory purposes while exempting other identical liquids from such classification without a rational basis for such differentiation and without being narrowly-tailored to advance a legitimate governmental interest; and

(iv)     Sections 1 through 6 of SEA 463 violate the Equal Protection Clause to the Fourteenth Amendment to the United States Constitution based upon the manner in which such provisions regulate electronic cigarette retail stores to the extent HRA 1432 violates the Equal Protection Clause given the impermissible differentiation between "electronic cigarette" and "vaping pen devices".

3.     The Petitioners seek a declaratory judgment with respect to their constitutional claims, and injunctive relief barring the Respondents from enforcing the challenged portions of HEA 1432 and SEA 463.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction to hear this case and adjudicate the Petitioners' claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

5.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2) because all of the Respondents reside or exist within the subject judicial district, and a substantial part of the events giving rise to the claims asserted herein occurred in the subject judicial district.

6.     This Court has authority to grant the Petitioners declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## PETITIONERS

7.     Legato is a Kentucky limited liability company which owns and operates a business engaged in the manufacturing, bottling, packaging and distribution of bottled liquids which are used in certain types of electronic cigarette vaping devices commonly known as open vaping system devices.  Legato manufactures, bottles and packages its products solely at a physical facility located in Louisville, Kentucky.  Legato's manufacturing, bottling and packaging operations comply with all applicable state and local laws in force at the place of such facility.  Legato sells

its products to electronic cigarette retail stores in the State of Indiana through a designated distributor.

8. Jet Setter is a Florida limited liability company which owns and operates a business engaged in the manufacturing, bottling, packaging and distribution of bottled liquids which are used in open vaping system devices. Jet Setter manufactures, bottles and packages its products solely at a physical facility located in Windermere, Florida. Jet Setter's manufacturing, bottling and packaging operations comply with all applicable state and local laws in force at the place of such facility. Jet Setter sells its products to electronic cigarette retail stores in the State of Indiana through a designated distributor.

9. Rocky Mountain is a Delaware limited liability company which owns and operates a business engaged in the manufacturing, bottling, packaging and distribution of bottled liquids which are used in open vaping system devices. Rocky Mountain manufactures, bottles and packages its products solely at a facility located in Kansas City, Missouri. Rocky Mountain's manufacturing, bottling and packaging operations comply with all applicable state and local laws in force at the place of such facility. Rocky Mountain sells its products to electronic cigarette retail stores in the State of Indiana.

10. DerbECigs is an Indiana limited liability company which owns and operates a retail electronic cigarette store in Clarksville, Indiana, within the Southern District of Indiana. DerbECigs purchases and sells bottled liquids manufactured by Legato, Jet Setter, Rocky Mountain and other similarly-situated manufacturers who wholly conduct their manufacturing, bottling, and packaging operations outside the State of Indiana. DerbECigs also distributes certain bottled liquids used in open vaping systems devices within the State of Indiana, including the liquids products manufactured by Legato and Jet Setter.

4

## RESPONDENTS

11.     Respondent, David Cook is the Chairman of the Indiana Alcohol and Tobacco Commission ("the Commission") and the Respondent David Coleman is the Vice-Chairman of the Commission.  The Respondents, Dale Grubb and Marjorie Maginn, are Commissioners of the Commission.  The Respondent, Matt Strittmatter, is the Superintendent of the Indiana Excise Police.  The Respondents Cook, Coleman, Grubb, Maginn and Strittmatter are being each sued in their respective official capacities.  In those official capacities, the Respondents Cook, Coleman, Grubb, Maginn and Strittmatter are charged with the implementation and enforcement of the challenged provisions of HEA 1432 and SEA 463.

12.     Respondent, State of Indiana ("the State"), is a body politic.  The State, acting through its legislature, enacted HEA 1432 and SEA 463 as a part of its governmental function authorized by applicable provisions of the Indiana Constitution and Indiana statutes.  The State is made a Respondent herein solely for the purpose of imposing an award of attorney's fees pursuant to 42 U.S.C. §1988 in the event the Petitioners prevail in their challenge of HEA 1432 and SEA 463.

13.     The Respondents are acting, and have acted, under color of state law with respect to the enactment, enforcement and/or supervision of the enforcement of the provisions of HEA 1432 and SEA 463 challenged herein by the Petitioners.

## COUNT I
## EQUAL PROTECTION CLAUSE VIOLATION:
## DISCRIMINATORY REGULATION OF SIMILARLY-SITUATED
## MANUFACTURERS AND PRODUCTS

14.     The Petitioners incorporate herein by this reference the allegations set forth above.

15.     HEA 1432, as modified in part by SEA 463, adds a new section to Indiana Code as Title 7.1 for the purpose of enacting regulations related to the manufacture, bottling, distribution

5

and sale of certain liquid products in Indiana utilized in certain types of electronic vaping devices.

16.     For purposes of its embodied regulations, Section 9 of HEA 1432 (codified in I.C. 7.1-7-2-10) defines "e-liquids" as being a "substance that:

(1)     is intended to be vaporized and inhaled using a vapor pen; and

(2)     specifically excludes substances contained in nonrefillable sealed cartridges of four (4) milliliters or less used in electronic cigarettes."

For purposes of such definition, Section 9 of the HEA 1432 further defines the terms "vapor pen" (codified in I.C. 7.1-7-2-23) as being "a powered vaporizer, other than an electronic cigarette, that converts e-liquid to a vapor intended for inhalation" and the term "electronic cigarette" (codified in I.C. 7.1-7-2-9) as being "a powered vaporizer that:

(1)     is the size and shape of a traditional cigarette;

(2)     uses a sealed nonrefillable cartridge containing not more than four (4) milliliters of a liquid; and

(3)     is intended to be vaporized and inhaled."

Such legislative definition of "electronic cigarette," however, excludes those items which the above-cited portion of HEA 1432 classifies as a "vapor pen".

17.     Both "electronic cigarettes" and "vapor pens," as HEA 1432 defines such devices, are relatively new technologies which allow a consumer to simulate smoking a cigarette, cigar, or other combustible tobacco product without producing smoke, and the corresponding direct health hazards to such consumer, or the secondary or tertiary health hazards to third-parties who may find themselves in the proximity a consumer.

18.     Instead, electronic cigarettes and vapor pens are battery-operated devices which cause the heating of metal coils contained therein when a consumer sucks on the device's nozzle tip.  The heating process causes the vaporization of a quantity of liquid contained in an enclosed storage tank.  The result of this process is the exhaling of a quantity of water vapor which scientific

6

data establishes is significantly safer and significantly less toxic than traditional combustible tobacco products, both to consumers and to any third-parties who may be in their proximity.

19.    For such reasons, both "electronic cigarettes" and "vapor pens" have become popular products among persons seeking to cease or reduce their use of, and dependency upon, combustible tobacco products.  On this basis, "electronic cigarettes" and "vapor pens" are thus essentially functional equivalent devices based upon their purpose and utility.

20.    Not surprisingly, the rise in popularity of "electronic cigarettes" and "vapor pens" has resulted in a closely-corresponding reduction in the consumption and use of traditional combustible tobacco products both in the United States and other countries.

21.    "Electronic cigarettes" and "vapor pens," as HEA 1432 defines such devices, operate by means of either an "open" or "closed" vaping system concept.  "Electronic cigarettes" typically operate on an open vaping system concept characterized as utilizing unsealed tanks which a user can fill and re-fill with a variety of different liquids.   "Vapor pens," on the other hand, operate on a closed vaping system concept which utilize sealed cartridges containing liquids which are not designed to be filled or re-filled by a consumer.

22.    In general, a substantial portion, if not all, "vapor pens," as defined by HEA 1432, (*i.e.* closed vaping system devices) are manufactured and distributed by traditional tobacco companies such as Altria Group (*MarkTen*® and *Nu Mark*® brands), Reynolds American (*VUSE*® brand), Lorillard Inc. (*Blu*® brand) and British American Tobacco, PLC (*VYPE*® brand).  At the present time, upon information and belief, such traditional tobacco companies do not produce or distribute liquid substances intended for use in devices classified by the HEA 1432 as "electronic cigarettes" (*i.e.* open vaping system devices).

7

23.     On the other hand, manufacturers such as Legato, Jet Setter, Rocky Mountain and other similarly-situated companies produce liquid substances intended for use exclusively in "electronic cigarettes" (open vaping system devices).

24.     Despite this legislative distinction between "electronic cigarettes" and "vapor pens" created by HEA 1432, the liquid substances utilized in open vaping system devices (subject to regulation) and closed vaping system devices (exempted from regulation) are virtually identical in both their chemical composition in that they contain substantially the same component ingredients (*i.e.* water, propylene glycol, glycerin, flavor additives, and perhaps nicotine) and in their functional use.

25.     By its terms, HEA 1432 (codified in I.C. 7.1-7-4-1), as modified in part by SEA 463, regulates the manufacturers and retailers of the liquids used in "electronic cigarettes" (open vaping system devices), but not the manufacturers and retailers of liquids used in "vapor pens" (closed vaping system devices), by requiring them to obtain a permit from the Commission as a condition of selling such products in Indiana.

26.     In addition, HEA 1432, as modified in part by Sections 8, 9 and 10 of SEA 463, further requires that e-liquid manufacturers adhere to rigorous manufacturing and bottling protocols with respect to any liquid products destined for sale in Indiana.  Among the protocols required by Section 9 of HEA 1432, as modified in part by SEA 463, are:

- Submission of plans for the construction and operation of a manufacturing facility which includes a "clean room" for mixing and bottling the e-liquids [I.C. 7.1-7-4-1(d)(1)];

- The manufacturing facility must enter into a minimum five year agreement with a security company to provide security services to the facility.  Such security company must satisfy certain national and international standards and have experience in video surveillance system design, installation and monitoring [I.C. 7.1-7-4-1(d)(2) and 7.1-7-4-1(d)(3)];

- A statement by the manufacturer of the projected output in liters per year for the facility [I.C. 7.1-7-4-1(d)(6)];

- Verification that the manufacturer will comply with the protocols embodied in HEA 1432 [I.C. 7.1-7-4-1(d)(8)];

- Consent to the Indiana State Police to perform a criminal background check on all persons listed on the license application [I.C. 7.1-7-4-1(d)(9)];

- Consent for the Commission to conduct on-site inspections, sample the e-liquid products and conduct audits [I.C. 7.1-7-4-1(d)(10)];

- Installation of child-proof caps on each e-liquid bottle [I.C. 7.1-7-4-6(b)(1)];

- The use of tamper-proof packaging for e-liquid containers [I.C. 7.1-7-4-6(b)(2)];

- Bottle labeling which states the product's active ingredients [I.C. 7.1-7-4-6(b)(3)];

- Inclusion of a separate statement on the label if the bottle contains nicotine [I.C. 7.1-7-4-6(b)(4)];

- Inclusion of the manufacturing date and batch number on the label [I.C. 7.1-7-4-6(b)(5)];

- Inclusion of a scanable code tied to each batch on the label [I.C. 7.1-7-4-6(b)(6)];

- Prohibition against selling an e-liquid after the earlier of two (2) years from the manufacture date or the expiration of the "best if used by" date [I.C. 7.1-7-4-6(b)(7);

- the manufacturing facility must conduct all mixing and bottling in a "clean room" as defined by HEA 1432 which satisfies the same Indiana standards for public health and cleanliness applicable to commercial kitchens operating in Indiana [I.C. 7.1-7-4-6(b)(8)];

- the manufacturing facility must store ingredients in a secure area [I.C. 7.1-7-4-6(b)(10)];

- the manufacturing facility must ensure that only authorized personnel are able to access the secure area [I.C. 7.1-7-4-6(b)(10) and 7.1-7-4-6(b)(14)];

- the manufacturing facility must have a remotely monitored security system in areas where e-liquids are mixed and bottled [I.C. 7.1-7-4-6(b)(11)];

- the manufacturing facility must have a high security key system which limits access to areas where e-liquids are mixed and bottled  [I.C. 7.1-7-4-6(b)(12)];

- the manufacturing facility must be subject to 24 hour video recording where the e-liquids are mixed and bottled [I.C. 7.1-7-4-6(b)(13)];

- the manufacturing facility must store three (3) ten (10) milliliter sample bottles from each production batch for at least three years in a secure, limited access area which has security cameras [I.C. 7.1-7-4-6(b)(15)];

- the manufacturing facility must submit to random inspections and audits by the Commission [I.C. 7.1-7-4-6(b)(16)]; and

- the manufacturing facility cannot have anyone with a financial interest who has been convicted of a felony or an offense involving controlled substances [I.C. 7.1-7-4-6(b)(19)].

27.    HEA 1432 (codified in I.C. 7.1-7-5-1) prohibits a manufacturer from selling e-liquids in Indiana without a permit, or if such e-liquids were not manufactured in accordance with the aforementioned protocols.

28.    HEA 1432 (codified in I.C. 7.1-7-5) further prohibits Indiana retailers such as DerbECigs from possessing or selling e-liquids either manufactured by an un-permitted manufacturer, or which fail to adhere to the aforementioned manufacturing protocols.

29.    HEA 1432 (codified in I.C. 7.1-7-6) provides for civil and administrative penalties against manufacturers who violate its provisions, and for civil and criminal penalties against retailers who violate its provisions.

30.    Section 9 of HEA 1432 (codified in I.C. 7.1-7-1-2) articulates the legislative goals of the aforementioned regulations are to:

(a).    Ensure the safety and security of e-liquids manufactured for sale in the State of Indiana;

(b).     Ensure that e-liquids manufactured or sold in the State of Indiana conform to appropriate standards of identity, strength, quality, and purity; and

(c).     Ensure that e-liquids are not contaminated or adultered by the inclusion of ingredients or other substances that might pose unreasonable threats to public health and safety.

31.     HEA 1432 does not evenhandedly regulate similarly-situated, if not identically-situated, liquid substances because such enactment operates upon the presumption the liquid substances contained in vapor pens (closed vaping systems) are manufactured in such a manner which satisfies the aforementioned legislative goals, while the liquid substances distributed for use in open vaping system devices do not satisfy such legislative goals.

32.     The Respondents, however, lack a rational basis for either such presumption because they lack any evidence that liquid substances manufactured for use in closed vaping systems are any safer, more secure, purer, and/or higher quality than those liquid substances manufactured for use in open vaping systems, or that the liquid substances manufactured for use in open vaping system devices are any less so.  This is the case because there is no evidence that Legato, Jet Setter, Rocky Mountain or any other open vaping system e-liquid manufacturer produces e-liquids which are harmful to consumers, or at least any more harmful than the e-liquid products manufactured for use in closed vaping system devices.

33.     Further, the legislative presumption that the liquids manufactured for use in closed vaping devices satisfy the aforementioned goals is negated by the fact the combustible tobacco industry, the same industry which controls the closed vaping system market, has a well-documented history of manipulating their tobacco products, including the addition of chemicals, for the purpose of making them more addictive to users.

34.     Based upon the foregoing, the Petitioners verily allege the Indiana Legislature specifically adopted HEA 1432, as modified in part by SEA 463, for the primary purpose of

benefiting those e-liquid manufacturers who control the closed vaping system market under the false guise of promoting public safety and welfare, while imposing undue and unequal regulatory burdens on those e-liquid manufacturers who serve the open vaping system market with virtually identical products.

35.     The Petitioners further assert the Indiana Legislature's true purpose in adopting HEA 1432, as modified in part by SEA 463, was to protect the economic interests of the traditional tobacco companies which now manufacture and distribute closed vaping system devices in order to protect the viability of such companies to make their future payments due under the Master Tobacco Settlement of which the State of Indiana is a beneficiary.  The Petitioners assert such purpose does not further the stated legislative goals of HEA 1432.

36.     Based upon the foregoing, the regulations and protocols imposed by HEA 1432, and specifically Section 9 thereof, are impermissibly discriminatory both on their face and as applied to Legato, Jet Setter, Rocky Mountain and other similarly-situated open vaping system e-liquid manufactures in violation of the rights and protections guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and such regulations and protocols do not further any legitimate, substantial, or compelling governmental interest.

37.     As a collateral effect of such impermissible discrimination, electronic cigarette retailers such as DerbECigs and other similarly-situated Indiana retailers will be forced from the marketplace to the extent that e-liquid manufacturers are either unwilling or unable to sell their products in Indiana as a result of the enactment and the Respondents' enforcement of the HEA 1432.

38.     Further, Indiana electronic cigarette retailers such as DerbECigs will be harmed by the collateral effects of the discrimination complained of above due to the civil and/or criminal

penalties resulting from continuing to conduct business with e-liquid manufacturers who either fail or refuse to comply with aforementioned unconstitutional provisions of HEA 1432.

39.     The Petitioners have accordingly suffered, or will suffer, substantial and tangible harm from the impermissible and unconstitutional actions described above, and are entitled to a Judgment which both strikes down HEA 1432 in its entirety, and permanently enjoins the Respondents from their enforcement of HEA 1432.

**COUNT II**
**COMMERCE CLAUSE VIOLATION: EXTRATERRITORIAL REGULATION**

40.     The Petitioners incorporate herein by this reference the allegations set forth above.

41.     The regulations set forth in HEA 1432, as modified in part by SEA 463, highlighted in numerical paragraph 26 above, apply to both in-state and out-of-state manufacturers of e-liquid products.

42.     Legato operates solely and exclusively in the State of Kentucky with respect to the manufacturing, bottling, packaging and distribution of its e-liquid products.  Legato's only connection with the State of Indiana is the sale of its e-liquid products to retail electronic cigarette stores through the distribution efforts of DerbECigs.

43.     Jet Setter operates solely and exclusively in the State of Florida with respect to the manufacturing, bottling, packaging and distribution of its e-liquid products.  Jet Setter's only connection with the State of Indiana is the sale of its e-liquid products to retail electronic cigarette stores through the distribution efforts of DerbECigs.

44.     Rocky Mountain operates solely and exclusively in the State of Missouri with respect to the manufacturing, bottling, packaging and distribution of its e-liquid products.  Rocky Mountain's only connection with the State of Indiana is the sale of its e-liquid products to retail electronic stores.

45.     The manufacturing regulations and protocols set forth in HEA 1432, as modified in part by SEA 463, will force Legato, Jet Setter, Rocky Mountain and other similar out-of-state e-liquid manufacturers to both alter virtually every facet of their production methods and systems with respect to commercial activities occurring wholly outside the State of Indiana, and subject themselves to regulation by the Respondents with respect to such out-of-state commercial activities, as a condition of selling their products to retailers and consumers in the State of Indiana.

46.     As such, the manufacturing regulations and protocols set forth in HEA 1432, as modified in part by SEA 463, highlighted in numerical paragraph 26 above, constitute the imposition of an extraterritorial regulatory authority and burden by the Respondents upon commercial activities occurring solely outside of the State of Indiana by Legato, Jet Setter, Rocky Mountain and other similarly-situated manufacturers in violation of the Commerce Clause to the United States Constitution.

47.     Further, based upon the allegations set forth above, HEA 1432, as modified in part by SEA 463, is not tailored to further any legitimate, substantial, or compelling governmental interest necessary to overcome the constitutional impairment of any extraterritorial regulatory actions by the Respondents.

48.     The Petitioners have accordingly suffered, or will suffer, substantial and tangible harm from the impermissible and unconstitutional actions described above, and are entitled to a Judgment which both strikes down those portions of HEA 1432, as modified in part by SEA 463, set forth in numerical paragraph 26 above, and permanently enjoins the Respondents from their enforcement of such provisions.

## COUNT III
## DUE PROCESS AND EQUAL PROTECTION CLAUSE VIOLATIONS: LACK OF RATIONAL BASIS FOR CLASSIFYING E-LIQUID AS A "TOBACCO PRODUCT" AND DISCRIMINATORY EXCLUSION OF IDENTICAL LIQUIDS WITHIN SUCH CLASSIFICATION

49.     The Petitioners incorporate herein by this reference the allegations set forth above.

50.     In adopting HEA 1432, as modified in part by SEA 463, the Indiana Legislature sought to regulate those e-liquids utilized in open vaping system devices as if they were the functional equivalent of combustible tobacco products such as cigarettes and cigars.   Such regulatory action is articulated in Section 8 of HEA 1432 (codified in I.C. 7.1-3-18.5) which defines the term "tobacco product" as being a product that:

> (1)     contains tobacco, including e-liquid (as defined by IC 7.1-7-2-10) that contains tobacco; and

> (2)     is intended for human consumption.

51.     Upon the Petitioners' information and belief, the liquid substances utilized in both open vaping system devices and closed vaping system devices do not themselves contain any actual tobacco.  However, some, but not all, liquid substances utilized in both open vaping system devices and closed vaping system devices may contain certain quantities of nicotine which was synthesized from a portion of the tobacco plant.

52.     The Petitioners verily believe the Respondents intend to interpret and enforce HEA 1432, as modified in part by SEA 463, in such a way as to include and encompass all e-liquids manufactured for use in open vaping system devices within the definition of "tobacco product" even if such substances do not contain any actual tobacco simply because such e-liquids may contain some quantity of nicotine synthesized from a portion of the tobacco plant.

53.     The e-liquid products manufactured by Legato, Jet Setter, Rocky Mountain and other similarly-situated manufacturers for use in open vaping system devices do not contain any

actual tobacco, and the vaporization of such e-liquids does not produce smoke which results in the emission of the types of toxic and harmful substances generally associated with the combustion of traditional tobacco products.

54.     Based upon the foregoing, there is no rational basis for the inclusion of e-liquids used in open vaping system devices which do not actually contain any actual tobacco within the definition of "tobacco product" for purposes of interpreting and enforcing HEA 1432, and such inclusion does not further any legitimate, substantial, or compelling governmental interest.

55.     In the absence of a legitimate, substantial, or compelling governmental interest, the inclusion of e-liquids used in open vaping system devices in the definition of a "tobacco product" in Section 8 of HEA 1432 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

56.     Further, the definition of "tobacco product" in HEA 1432 includes only those liquid substances used in open vaping system devices, while specifically exempting those liquid substances utilized in closed vaping system devices.

57.     As alleged in numerical paragraph 24 above, the liquid substances utilized in open vaping system devices (regulated by HEA 1432) are virtually identical in their chemical composition and functional use to the liquid substances utilized in closed vaping system devices (exempted from regulation by HEA 1432).

58.      Despite such fact, HEA 1432 enacts an impermissibly discriminatory classification which defines one group of liquid substances as "tobacco products" and does not so define another virtually identical group of liquid substances.  Such discriminatory classification embodied in Section 8 of HEA 1432 is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution both on its face and as applied to Legato, Jet Setter, Rocky

Mountain and other similarly-situated e-liquid manufactures, and does not further any legitimate, substantial, or compelling governmental interest.

59.     The Petitioners have accordingly suffered, or will suffer, substantial harm from the impermissible and unconstitutional actions described above, and are entitled to a Judgment which strikes down Section 8 of HEA 1432, and enjoins the Respondents from its enforcement.

**COUNT IV**
**EQUAL PROTECTION CLAUSE VIOLATION:**
**DISCRIMINATORY REGULATION OF RETAILERS**
**OF SIMILARILY-SITUATED PRODUCTS**

60.     The Petitioners incorporate herein by this reference the allegations set forth above.

61.     I.C. 7.1-3-18.5 requires that persons who sell and/or distribute tobacco products in the State of Indiana must obtain a Tobacco Sales Certificate from the Commission.

62.     Sections 1 through 6 of SEA 463 amended various provisions of I.C. 7.1-3-18.5 to require, effective July 15, 2015, that all persons who sell electronic cigarettes to obtain a tobacco sales certificate from the Commission.

63.     Sections 1 through 6 of SEA 463 will thus require DerbECigs and all other Indiana "electronic cigarette" (open vaping system device) retailers to obtain a Tobacco Sales Certificate, but will exempt those Indiana retailers who sell "vapor pens" (closed vaping system devices) from the requirement to obtain such Certificates.

64.     As asserted above, both "electronic cigarettes" and "vapor pens" are functional equivalents based upon their purpose and utility, and based upon the fact the liquids used therein are virtually identical.

65.     Based upon the foregoing, the Indiana Legislature's inclusion of "electronic cigarettes" within the scope of the various provisions embodied in I.C. 7.1-3-18.5 as imposed by Sections 1 through 6 of SEA 463, and the exclusion of "vapor pens" from such statutory

17

regulations, is impermissibly discriminatory on both its face and as applied to DerbECigs and other similarly-situated Indiana retailers in violation of the rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and such regulations do not further any legitimate, substantial, or compelling governmental interest.

66.     As was the case with HEA 1432, the Petitioners assert the true purpose of Sections 1 through 6 of SEA 463 was not to promote public safety and welfare, but instead to protect the economic interests of the traditional tobacco companies which now manufacture and distribute closed vaping system devices, and thus protect the State's future payments due under the Master Tobacco Settlement with such traditional tobacco companies.

67.     The Petitioners have accordingly suffered, or will suffer, substantial and tangible harm from the impermissible and unconstitutional actions described above, and are entitled to a Judgment which both strikes down Sections 1 through 6 of SEA 463 in their entirety, and permanently enjoins the Respondents from their enforcement of such Sections of SEA 463.

## **REQUEST FOR RELIEF**

WHEREFORE, Petitioners seek the following relief:

A.     A Judgment declaring that HEA 1432, as modified in part by Sections 8, 9 and 10 of SEA 463, is unconstitutional in its entirety both on its face and as applied in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution on the basis that such provisions do not equally regulate similarly-situated e-liquid manufacturers, and do not advance a legitimate governmental interest;

18

B.      A Judgment declaring those portions of HEA 1432, as modified in part by Sections

9 and 10 of SEA 463, now codified in:

I.C. 7.1-7-4-1(d)(1);

I.C. 7.1-7-4-1(d)(2);

I.C. 7.1-7-4-1(d)(3);

I.C. 7.1-7-4-1(d)(6);

I.C. 7.1-7-4-1(d)(8);

I.C. 7.1-7-4-1(d)(9);

I.C. 7.1-7-4-1(d)(10);

I.C. 7.1-7-4-6(b)(1);

I.C. 7.1-7-4-6(b)(2);

I.C. 7.1-7-4-6(b)(3);

I.C. 7.1-7-4-6(b)(4);

I.C. 7.1-7-4-6(b)(5);

I.C. 7.1-7-4-6(b)(6);

I.C. 7.1-7-4-6(b)(7);

I.C. 7.1-7-4-6(b)(8);

I.C. 7.1-7-4-6(b)(10);

I.C. 7.1-7-4-6(b)(11);

I.C. 7.1-7-4-6(b)(12);

I.C. 7.1-7-4-6(b)(13);

I.C. 7.1-7-4-6(b)(14);

I.C. 7.1-7-4-6(b)(15);

I.C. 7.1-7-4-6(b)(16); and

I.C. 7.1-7-4-6(b)(19)

are unconstitutional in violation of the Commerce Clause to the United States Constitution on the basis that such provisions impose an impermissible extraterritorial regulation upon commercial activities occurring wholly in another state, and that such provisions do not advance a legitimate governmental interest;

C.     A Judgment declaring that HEA 1432, as modified in part by SEA 463, unconstitutional in its entirety in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution on the basis that no rational basis exists for including "e-liquids" within the definition of "tobacco products" for purposes of the permitting requirements embodied in I.C. 7.1-3-18.5, that such definition is impermissible discriminatory on its face and as applied because it imposes permitting requirements upon retailers who sell "electronic cigarettes" but exempts retailers who sell similarly-situated "vapor pens," and that such differentiation in classification does not advance a legitimate governmental interest;

D.     A Judgment declaring that Sections 1 through 6 of SEA 463 are unconstitutional in their entirety both on their face and as applied in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution on the basis that such provisions do not equally regulate similarly-situated retailers, and does not advance a legitimate governmental interest;

E.     A preliminary and permanent injunction which restrains and enjoins the Respondents from enforcing the challenged provisions of HEA 1432 and SEA 463; and

F.     An award of costs and expenses, including reasonable attorney's fees against the Respondents pursuant to 42 U.S.C. § 1988; and

G.     Such other relief as the Court deems appropriate to afford Petitioners full relief.

Respectfully submitted,

  /s/  J. Gregory Troutman
J. GREGORY TROUTMAN
TROUTMAN LAW OFFICE, PLLC
312 South Fourth Street, Suite 700
Louisville KY  40202
(502) 214-3307
jgtatty@yahoo.com
Counsel for Petitioners

Dated: June 2, 2015